**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Wayne GOODWIN,
Defendant–Appellant.**

**No. 91–5015.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 10, 1991.

Decided April 30, 1992.

Rehearing and Rehearing En Banc
Denied June 22, 1992.

Wendy Goggin (briefed), Hal McDonough (argued), Melissa Harrison, Asst. U.S. Attys., Ernest W. Williams, U.S. Atty., Office of U.S. Atty., Nashville, Tenn., for plaintiff-appellee.

Peter J. Strianse, Tune, Entrekin & White, Nashville, Tenn. (argued and briefed), for defendant-appellant.

Before: RYAN and NORRIS, Circuit Judges; and DUGGAN, District Judge.*

ALAN E. NORRIS, Circuit Judge.

Donald Wayne Goodwin appeals the district court's denial of his motion for a judgment of acquittal. He contends that the government failed to present sufficient evidence to the jury to support its finding that he had conspired to steal an interstate shipment of goods in violation of 18 U.S.C. § 659.[1] Specifically, he argues that the goods were not "moving as part of an interstate shipment of freight" at the time of their theft, as charged in the indictment.

## I.

This prosecution followed the theft of a trailer loaded with aluminum products from the yard of the Neilsen–Bainbridge Company ("Bainbridge") in Gainsboro, Tennessee, on or about May 26, 1989. At the time of the theft, Bainbridge employed the Pendex Transportation Company ("Pendex") to transport its products. Neither party disputes that the stolen trailer belonged to Pendex and contained goods made by Bainbridge.

According to trial testimony, the trailer was stolen by Jere Apple and Kenny Chaffin. They did so with the knowledge and assistance of Goodwin, who accepted delivery of the stolen goods in Dayton, Ohio. Apple stated at trial that Goodwin had, among other things, advised them about the grade of aluminum to steal.

Bainbridge employees finished loading the trailer at 11:30 p.m. on Friday, May 26th, just as the long Memorial Day weekend was due to begin. Shortly after midnight, Apple and Chaffin hooked the loaded trailer onto a stolen semi-truck tractor and drove off. The bill of lading for the stolen shipment was not signed by Pendex representative Louis Robinson until the morning of the next working day, Tuesday, May 30th. At the time he signed for the trailer, Robinson was unaware of its theft.

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Section 659 contains the following provisions:

> Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle ... with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or
>
> Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen....
>
> ....
>
> Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both....

18 U.S.C. § 659 (1988).

## II.

We begin by noting that in a criminal case the standard of review for claims of insufficient evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the government. *United States v. Acosta–Cazares*, 878 F.2d 945, 951 (6th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

Because the trailer was stolen from Bainbridge property before a bill of lading had been signed, appellant contends that the aluminum frames in question had not yet entered the stream of interstate commerce as required by 18 U.S.C. § 659.

A number of courts of appeals have discussed this issue. In *United States v. Cousins*, 427 F.2d 382 (9th Cir.1970), the court provided the following analysis: "The determination of whether a shipment is in interstate commerce at a given time is essentially a practical one, depending upon the relationship between the consignee, consignor, and carrier, the indicia of interstate commerce at the time the theft occurs, and the preservation of the congressional intent." *Id.* at 385.

Likewise, in *United States v. Williams*, 545 F.2d 1036, 1039 (6th Cir.1976), this circuit endorsed a practical approach to this issue. In *Williams*, the defendant had stolen fifteen cans of herbicide from a loading dock. Although the indictment did not state precisely the place or facility from which the cans were taken, this court found that the relationship between the business parties, the movement of the finished cans, and the theft from the loading dock were sufficient to show indicia of interstate commerce. Moreover, *Williams* expressly rejected the type of "hypertechnical" argument raised by appellant, citing *Dunson v. United States*, 404 F.2d 447, 448 (9th Cir.1968), *cert. denied*, 393 U.S. 1111, 89 S.Ct. 925, 21 L.Ed.2d 808 (1969), in support: "The language of section 659 evidences a clear purpose to reach the depredations affecting any conceivable instrumentality by which the interstate transportation of freight may be accomplished."

In order to determine whether the goods stolen here were moving as part of an interstate shipment, then, one must look to the totality of the circumstances. Under the circumstances of this case, that means looking for evidence that would warrant a conclusion that the goods had begun their journey in interstate commerce at the time of their theft. No single piece of bright-line evidence, such as the timing of the signing of a bill of lading or whether Pendex had yet to remove the goods from Bainbridge property, is required. Any combination of evidence that would support the required finding by a reasonable trier of fact will suffice.

Having reviewed the trial testimony, we conclude that there was ample evidence to support the jury's determination that the stolen goods were moving in interstate commerce, as contemplated by the statute, at the time of their theft. The goods, which were destined for shipment to a distribution center in Townsend, Massachusetts, had been selected from existing stock, moved across the shipping dock, and loaded into the Pendex trailer. In addition, a Pendex employee testified that his company accepted responsibility for the load once it was on a Pendex trailer.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

RYAN, Circuit Judge, dissenting.

Count II of the indictment in this case charged the defendant, Donald Wayne Goodman, with conspiracy to violate 18 U.S.C. § 659 by "... willfully ... steal[ing] ... a load of aluminum molding ... which was *moving as a part of an interstate shipment* of freight ... from the State of Tennessee to the State of Massachusetts." (Emphasis added.)

The majority properly cites the legal standards governing claims of insufficient evidence in criminal cases. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In my judg-

ment, however, no reasonable juror could conclude, on the evidence presented, that the load of aluminum in the semi-trailer was "moving" in interstate commerce. The requirement that the contraband be "moving" as of the date of the theft is not a pleading technicality or a legal fiction; it is an essential element of the offense charged and the basis for federal jurisdiction. *See Winer v. United States*, 228 F.2d 944, 947 (6th Cir.), *cert. denied*, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). I believe the government's failure to prove that the aluminum was moving in interstate commerce as of May 27, 1989, is fatal to this prosecution for conspiracy to violate section 659.

The majority opinion cites no evidence from the record to support its conclusion that the contraband, when stolen, was "moving" in interstate commerce. It simply concludes that "there was ample evidence" of the required movement. Yet a careful review of the evidence presented at trial establishes several reasons why no reasonable juror could come to the conclusion that at the time of the theft, in the early morning hours of Saturday, May 27, 1989, the contraband was "moving as ... a part of ... an interstate ... shipment of freight."

Pendex Transportation Company is a common carrier that had the contract to haul goods from the Neilsen–Bainbridge plant during May of 1989. Pendex assigned one of its employees, Louis D. Robinson, to the Neilsen–Bainbridge plant and his duty was primarily to verify that loads Pendex was to carry contained the proper goods in the correct amount. It was Robinson's responsibility, after inspecting the load, to sign a bill of lading certifying that the load was complete and ready for shipment, and designating its final destination. The trailer doors could then be closed and sealed, and a tractor hooked up to the trailer. The entire rig would then be driven to a holding area some distance from the loading dock and remain there until an over-the-road driver was assigned.

In this case, few, if any, of these preliminary steps had been taken at the time the trailer and its contents were stolen from the Neilsen–Bainbridge loading dock. The facts presented at trial establish that the Neilsen–Bainbridge employees completed loading the trailer at about 11:30 p.m. on Friday, May 26. The trailer remained at the Neilsen–Bainbridge loading dock, inside the fenced Neilsen–Bainbridge property, and the loading crew left work for the Memorial Day weekend. The trailer doors remained opened and, of course, unsealed. No one had verified the contents of the load. The bill of lading had not been signed authorizing the release of the goods, and since the shipment was not scheduled to leave Gainsboro, Tennessee for three days, no tractor had been hooked up to the trailer. These facts clearly establish that Neilsen–Bainbridge had not yet turned over control of the trailer to Pendex. Shortly after midnight, the thieves hooked a tractor to the open and unattended trailer and drove it away.

In my judgment, no reasonable juror could conclude that the unattended, open, unsealed trailer sitting at the shipper's dock, without a tractor attached and before a bill of lading had been executed verifying the contents of the load and authorizing its departure, was "moving" in interstate commerce.

Consequently, I respectfully dissent.