981 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Robert MINCOFF, Defendant-Appellant.
 No. 91-50480.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1992.*
Decided Dec. 23, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Robert Mincoff was convicted by a jury of possession of ephedrine with intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(d)(1) and 802(34)(c). Mincoff appeals his conviction on the following grounds: 1) outrageous government conduct; 2) improper admission of evidence; 3) improper jury instructions; 4) insufficient evidence; 5) improper sentencing; and 6) ineffective assistance of counsel.[1] We reject all of the claims and affirm.
 
 I. Factual Background
 
 3
 Mincoff's arrest was the result of a scheme devised by a drug chemical supplier named Vincent DeVito. DeVito was operating pursuant to a cooperation agreement with the government, and throughout the planning and execution of the events leading up to Mincoff's arrest, DeVito was in constant communication with Agent Claude Powers of the Drug Enforcement Agency ("DEA").
 
 
 4
 Mincoff had asked to buy from DeVito chemicals used to make methamphetamine. DeVito arranged a scheme with Mincoff whereby Mincoff would pay DeVito a downpayment of $5,000 for 20 pounds of ephedrine (a precursor chemical used in the manufacture of methamphetamine.) DeVito would then deliver the ephedrine to Mincoff, arrange the equipment necessary to turn the ephedrine into methamphetamine, and assist Mincoff in the manufacturing process. Once the drug was manufactured, the two agreed that Mincoff would pay DeVito an additional sum.
 
 
 5
 Mincoff paid DeVito $5,000 and a short time later met with DeVito to receive the 20 pounds of ephedrine. Immediately following the meeting, Mincoff was arrested and charged with possession of ephedrine with intent to manufacture methamphetamine.
 
 II. Outrageous Government Conduct Claim
 
 6
 Before trial, Mincoff made a motion to dismiss the indictment on the grounds of outrageous government conduct. The district court denied the motion without making any specific findings of fact. On October 18, 1990 Mincoff was found guilty of the one count charged and sentenced to 120 months imprisonment.
 
 
 7
 Mincoff contends that the district court erred by failing to dismiss his indictment for outrageous government conduct. "A motion to dismiss an indictment on grounds of unreasonable governmental conduct is a question of law reviewed de novo." United States v. Mitchell, 915 F.2d 521, 522 (9th Cir.1990), cert. denied, 114 L.Ed.2d 81 (1991) (citation omitted). In order to justify a dismissal, the government conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Allen, 955 F.2d 630, 631 (9th Cir.1992) (citation omitted). Unsavory conduct alone does not warrant the dismissal of an indictment. Id. at 631.
 
 
 8
 Mincoff claims that the government engaged in outrageous conduct by engineering and directing the entire methamphetamine manufacturing scheme. Mincoff argues that he was not interested in manufacturing methamphetamine until he was contacted and pressured by DeVito, and that only DeVito had the equipment and knowledge necessary to manufacture the methamphetamine.
 
 
 9
 This court has found outrageous government conduct in only one case, Greene v. United States, 454 F.2d 783 (9th Cir.1971). Greene involved a government aided illegal liquor manufacturing operation. The court found that the government became "so enmeshed in criminal activity, from beginning to end" that the "same underlying objections which render entrapment repugnant to American criminal justice" were operative. Id. at 787.
 
 
 10
 This court has read Greene very narrowly. Allen, 955 F.2d at 631 ("the relief opened by this defense is a most narrow one"). In Mitchell, this court refused to find "outrageous" a government scheme which involved soliciting individuals for the purchase of child pornography. 915 F.2d at 528. The scheme involved sending questionnaires to persons whom the government believed might be interested in child pornography. Those who replied to the questions in a certain manner were then solicited. Applying the Greene standard, the court found that because the government had not threatened or coerced the purchasers, there was no outrageous government conduct. Id. 915 F.2d at 525.
 
 
 11
 Likewise, this court refused to find outrageous government conduct where the government had offered and sold illegal food stamps and then had given the customer advice on how to resell them. Shaw v. Winters, 796 F.2d 1124 (9th Cir.1986), cert. denied, 481 U.S. 1015 (1987). In refusing to find outrageous conduct, the court emphasized that the defendant had purchased the foodstamps "willingly and without pressure." Id. at 1125.
 
 
 12
 There is no question that the government was deeply involved in the present scheme. Taken as a whole, however, Mincoff's allegations do not reveal the level of governmental pressure required under Greene. There were no threats to Mincoff's safety. Furthermore, while Mincoff may have been under financial pressure to complete the deal, it was his decision to risk investing his money in an illegal scheme. While the government played an important role in the methamphetamine manufacturing scheme, the government's actions were not "so grossly shocking and so outrageous as to violate the universal sense of justice." Allen, 955 F.2d at 631. The district court properly denied Mincoff's motion to dismiss his indictment.
 
 III. Admission of Evidence Claim
 
 13
 Mincoff contends that under Federal Rule of Evidence 404(b), the district court erred by refusing to strike a statement made at trial that he had a "criminal history." The statement was made by Agent Powers in direct response to a question by Mincoff's attorney, and therefore falls within the "invited error" doctrine: an error that is caused by the actions of the complaining party will cause reversal "only in the most exceptional situation." United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991).
 
 
 14
 This is not a "most exceptional" situation. When defense counsel asked Agent Powers, "James Mincoff has no criminal history, does he," Agent Powers answered, "Yes, he does have a criminal history." Taken as a whole, the exchange between Agent Powers and Mincoff's counsel made clear that Mincoff had never been convicted of any crimes. The district court did not err by failing to strike Agent Power's statement that Mincoff had a criminal history.
 
 IV. Jury Instructions Claim
 
 15
 Mincoff contends that the district court erred in instructing the jury with regard to 1) the informant's testimony and 2) evidence pertaining to Mincoff's character.[2] As no objections to the instructions were raised at trial, this court only reviews for plain error. United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991).
 
 
 16
 The district court's instructions regarding the informant's testimony were substantially similar to those recommended by the Manual of Model Criminal Jury Instructions for the Ninth Circuit (1992). Likewise, the district court's instruction regarding evidence of Mincoff's character was exactly the same as the model instruction for evidence regarding a defendant's character, except for the exclusion of one word which was left out per a request from Mincoff's attorney. The district court did not err by issuing either instruction.
 
 V. Insufficient Evidence Claim
 
 17
 Mincoff contends that there was insufficient evidence to find that he had the intent to manufacture methamphetamine. There is sufficient evidence to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (citation omitted).
 
 
 18
 Mincoff points to two facts to support his argument: 1) a search of his house (where the manufacturing was to take place) revealed none of the equipment necessary to manufacture methamphetamine, and 2) Mincoff testified that at the time he received the precursor chemicals his situation had changed and he would have been willing to sell the precursor chemicals to a friend. That no equipment was found at Mincoff's home is not entirely surprising in light of evidence that the plan was for DeVito to secure the necessary equipment and bring it to Mincoff's home.
 
 
 19
 Furthermore, simply because Mincoff testified that he would have been willing to abandon the deal and sell the precursor chemicals does not mean that there was insufficient evidence to prove intent to manufacture. At trial the government introduced a series of transcripts of conversations between Mincoff and DeVito. During the conversations Mincoff discussed at some length and in some detail the procedure and equipment he intended to use to manufacture methamphetamine from the precursor chemicals. The transcripts of Mincoff's conversations alone provided evidence for finding that Mincoff intended to manufacture methamphetamine. We find that there was sufficient evidence for a rational trier of fact to find that Mincoff intended to manufacture methamphetamine.
 
 VI. Sentence Calculation Claim
 
 20
 Mincoff contends that his sentence should be recalculated. At the time Mincoff was sentenced (April 1, 1991), there was no provision in the United States Sentencing Guidelines dealing specifically with convictions involving precursor chemicals. Following the accepted practice of this Circuit, the district court judge calculated Mincoff's sentence under U.S.S.G. § 2D1.1. United States v. Cook, 938 F.2d 149, 152 (9th Cir.1991).
 
 
 21
 Effective November 1, 1991, the Guidelines were amended to include § 2D1.11, which governs offenses involving precursor chemicals. Mincoff claims that § 2D1.11 should be given retroactive effect and that his sentence should be recalculated and reduced by almost half. Mincoff's claim is without merit. The Guidelines' "policy statement" on the retroactive effect of the Guideline rules specifically states that only those amendments listed in § 1B1.10(d) are to be given retroactive effect; the amendment containing § 2D1.11 is not among those listed. Under 18 U.S.C. § 3582(c), courts can only reduce sentences in a manner consistent with the policy statements found in the Guidelines. See United States v. Mooneyham, 938 F.2d 139, 140 (9th Cir.1991), cert. denied, 116 L.Ed. 461 (1991). We therefore deny Mincoff's motion to recalculate his sentence.
 
 VII. Ineffective Assistance of Counsel Claim
 
 22
 Mincoff claims that he received ineffective assistance of counsel at trial. The ordinary procedure for raising a claim of ineffective assistance of counsel in this Circuit is by a collateral attack under 28 U.S.C. § 2255, which allows the district court to develop a record. However where, as here, the record is sufficiently complete to allow the court to address the merits of the issue this court will address an ineffective assistance of counsel claim on direct appeal. United States v. Mal, 942 F.2d 682, 689 (9th Cir.1991). A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-690 (1984). Mincoff has failed to allege any behavior on the part of his counsel which could be considered "outside the wide range of professionally competent assistance," and we find that he was not denied effective assistance of counsel at trial.
 
 
 23
 The judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.Proc. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not consider the appellant's "cumulative error" argument, which he raised for the first time in the Reply Brief, per this court's holding in United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992 (claims not raised in appellant's opening brief are not considered with three exceptions)
 
 
 [2]
 In the same section of the brief which alleges faulty jury instructions, Mincoff also argues that DeVito perjured himself on the stand. This claim neither bolsters the jury instruction claim nor provides independent grounds for reversal