99 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick McCORD and Carlos McCord, Defendants-Appellants.
 Nos. 95-50152, 95-50154.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1996.
Decided Sept. 30, 1996.
 
 1
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Carlos McCord ("Carlos") and Patrick McCord ("Patrick") appeal their jury convictions and sentences for conspiracy to distribute and to possess with intent to distribute methamphetamine, 21 U.S.C. §§ 846 & 841(a)(1), and possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1). We affirm the convictions, but vacate the sentences and remand for resentencing.
 
 I.
 
 4
 Prior to trial, Patrick moved to exclude his prior 1991 state court conviction of possession of methamphetamine for sale. Patrick argued that the quantity of drugs in the prior case was extremely small and was not similar to the "complex" conspiracy alleged in the present case. The government opposed the motion and argued that the conviction was admissible to establish Patrick's knowledge and intent under Fed.R.Evid. 404(b), and that if Patrick raised the entrapment defense, the conviction would be admissible to establish his predisposition. The district court denied the motion.
 
 
 5
 During its case-in-chief, the government introduced evidence of the prior conviction. The Court, however, gave the following limiting instruction to the jury:
 
 
 6
 Ladies and gentlemen, you are about to hear testimony that the defendant, Patrick McCord, previously committed a crime similar to the one charged here. I instruct you that this testimony is being admitted only for the limited purpose of being considered by you on the question of [d]efendant Patrick McCord's intent, knowledge, and predisposition to commit the crimes charged here and for no other purpose.
 
 
 7
 We review admission of a prior conviction under 404(b) for an abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990).
 
 
 8
 In United States v. Simtob, 901 F.2d 799 (9th Cir.1990), we explained that under Rule 404(b), where entrapment is in issue, evidence of other crimes is admissible to prove "predisposition" if:
 
 
 9
 1) the prior act is similar and close enough in time to be relevant, 2) the evidence is clear and convincing, and 3) the probative value of the evidence outweighs any potential prejudice.
 
 
 10
 Id. at 807 (citing United States v. Lopez-Martinez, 725 F.2d 471, 477 (9th Cir.), cert. denied, 469 U.S. 837 (1984)).
 
 
 11
 Patrick's 1991 state conviction involved the sale of methamphetamine for cash, while the instant charge involved the exchange of methamphetamine for ephedrine and cash. Patrick argues that the prior conviction was not "similar" or in "close enough time" to the current charges to be relevant under Simtob, and that the probative value of the evidence did not outweigh its prejudicial effects.
 
 
 12
 Patrick relies on United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir.1995), in which we held that evidence that the defendant used methamphetamine, or possessed a small amount of the drug, does not tend to prove that he conspired to manufacture it or that he was aware that a certain chemical in his possession was used to manufacture the drug. Id. at 1015. We explained that "there is an important distinction to be drawn between an individual's private use of a small quantity of a drug and his knowledge of the drug's manufacturing process or his participation in a large-scale conspiracy to possess precursor chemicals in order to manufacture the drug." Id. Patrick also cites other cases in which we held that evidence of a defendant using drugs prior to the drug transaction in question or being convicted of possession could not be admitted as evidence to convict him of conspiracy or possession with intent to distribute drugs. See United States v. Hill, 953 F.2d 452, 457 (9th Cir.1991); United States v. Bramble, 641 F.2d 681, 682 (9th Cir.1981), cert. denied, 459 U.S. 1072 (1982).
 
 
 13
 In Simtob, however, we explained that "[w]here entrapment is in issue, 'similarity' of prior drug offenses exists if the earlier conviction tends to prove that defendant was engaged in illegal operations in some way similar to those charged in the indictment, even if the drugs involved may be different." Simtob, 901 F.2d at 807 (emphasis added) (citing United States v. Lopez-Martinez, 725 F.2d 471, 477 (9th Cir.), cert. denied, 469 U.S. 837 (1984)). Unlike the defendant in Vizcarra-Martinez, Patrick had not simply "used" or "possessed" drugs, but had pled guilty in 1991 to "possession with intent to distribute" methamphetamine. The elements of the previous conviction and the current charges are nearly identical, and both involve the sale of methamphetamine. Furthermore, the prior conviction occurred only three years previous to the instant charge. See Houser, 929 F.2d at 1373 (conviction that occurred five years prior to the charge at issue was not too remote in time).
 
 
 14
 Additionally, Patrick's suggestion that this exchange of ephedrine for methamphetamine and cash was unusually complex is unconvincing. The fact that the prior conviction was for cash and the other was for ephedrine and cash, or that one may have been for a smaller quantity is not sufficient to find abuse of discretion in the district court's ruling that the crimes were "in some way similar". Simtob, 901 F.2d at 807.
 
 
 15
 In denying Patrick's motion, the district court ruled that there was "high probative value to the government to rebut an entrapment defense to show intentional predisposition." Patrick argues that this ruling was an abuse of discretion, and simply restates his argument that there was "little or no similarity between the two offenses" and that they occurred too remote in time for the prior conviction to be relevant. We reject these arguments.
 
 
 16
 In Simtob, we were faced with convictions that were 12 and 13 years old. Despite this fact, and recognizing that predisposition was a "major, if not central issue in the case," we ruled that there was "some probative value" to the prior convictions, explaining that "[w]e do not have a situation in which the jury has improperly inferred predisposition based upon convictions which were not at all probative, and it seems clear that the trial judge considered both the age and 'remoteness,' of the convictions in response to counsel's suppression motion." Id. at 808 (emphasis in original).
 
 
 17
 Similarly, the district court in this case clearly considered the remoteness of Patrick's prior conviction and the similarity to the instant charge in determining that there was "high probative value to the government to rebut an entrapment defense that outweighed the natural prejudice to the defendant." The crimes occurred only three years apart, involved the same drugs, and included nearly identical elements. Furthermore, a defendant who raises the entrapment defense "cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." Sorrells v. United States, 287 U.S. 435, 451-52 (1932). Accordingly, we find no abuse of discretion in the district court's admission of this evidence and affirm the district court's denial of Patrick's motion to exclude evidence of his prior conviction.
 
 
 18
 We also reject Patrick's contention that the district court erred in allowing the government to introduce the prior conviction in its case-in-chief. Patrick not only raised the entrapment defense during his opening statement, but clearly used entrapment as a defense during the trial. As the Seventh Circuit has previously explained, "[w]hen the entrapment defense is clearly raised in the defense's opening statement and the entrapment defense obviously materializes through a defendant's presentation of its own witnesses or through cross-examination of the government's witnesses, it is not error for the government to present evidence of predisposition in its case-in-chief, provided the evidence meets the standard of Rule 403." United States v. Goodapple, 958 F.2d 1402, 1407 (7th Cir.1992). Accordingly, we find no error in the district court's permitting the prior crime evidence to be presented during the government's case-in-chief.
 
 II.
 
 19
 During its case-in-chief, the government called a DEA case agent who testified as an expert in narcotics enforcement. When the case agent was asked to discuss the typical drug-trafficking deal and the typical relationship between two narcotics traffickers, Patrick objected to the testimony on the basis of relevance under Rule 402 and undue prejudice under Rule 403. The district court tentatively overruled Patrick's objection, but heard argument and made its findings outside the presence of the jury.
 
 
 20
 Patrick argues that the district court erred in overruling his objection, because the case agent's testimony amounted to drug trafficker "profile" evidence. He maintains that this evidence was "extremely inflammatory" and "could lead the jury to the belief that defendants were drug traffickers without actual proof that defendants engaged in such activities." He relies primarily on United States v. Lim, 984 F.2d 331, 334-35 (9th Cir.), cert. denied, 508 U.S. 965 (1993), and United States v. Lui, 941 F.2d 844 (9th Cir.1991).
 
 
 21
 In Lim, we explained that admission of drug courier profile evidence is "inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity," and we held that the district court abused its discretion in admitting drug courier profile evidence because the profile was applied to "two innocuous bit of evidence" concerning the defendant, namely: 1) that he was engaging in domestic travel; and 2) that he was not carrying drugs. Lim, 984 F.2d at 334-35. Lui also involved application of a "drug courier profile" to "items that were perfectly innocent," namely: 1) the use of a hard-sided suitcase and 2) travelling for the stated purpose of visiting a relative. Lui, 941 F.2d at 847-48. In both of these cases, we were concerned that "profile" evidence would be used to convince a jury that perfectly innocent behavior was evidence of guilt. The same concerns are not present in the instant appeal.
 
 
 22
 While we are wary of "profile" evidence, the case agent's testimony was not drug courier "profile" evidence, but was merely an explanation for the jury of the manner in which drug dealers deal with each other. For example, the case agent testified how drug dealers initially sell small quantities of drugs and then gradually increase the quantity once a relationship is developed. This is not the type of "innocuous" drug courier profile evidence that we have previously been concerned with. Rather, the testimony was used to inform the jury of the background and nature of a case agent's work in a typical drug investigation. Accordingly, since this was not "profile" evidence, and because the district court clearly stated why the evidence was relevant and more probative than prejudicial, we find no abuse of discretion in the district court's ruling.
 
 III.
 
 23
 In considering a challenge to the sufficiency of the evidence, we decide, after viewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Aichele, 941 F.2d 761, 763 (9th Cir.1991). Patrick challenges the sufficiency of the evidence against him on both the drug conspiracy count and the substantive count of possession with intent to distribute methamphetamine.
 
 
 24
 (a) Conspiracy
 
 
 25
 The essential elements of a drug conspiracy under 21 U.S.C. § 846 as charged in Count One are an agreement to commit the unlawful act of possessing with intent to distribute a controlled substance, knowing of the conspiracy's objectives and intending to help further them. United States v. Shabani, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); United States v. Gil, 58 F.3d 1414, 1423 n. 5 (9th Cir.), cert. denied, 116 S.Ct. 430 (1995).
 
 
 26
 At trial, there was substantial evidence that Patrick agreed with many parties, including his father Carlos and co-defendants Madrid and Belmonte, to distribute methamphetamine in exchange for ephedrine. The informant had numerous telephonic conversations and face-to-face meetings with both Patrick and Carlos regarding the proposed transaction. Obviously, Patrick and Carlos had agreed to carry out the transaction in question. Furthermore, during these meetings Patrick arranged for the transaction to take place at his home and also arranged for Madrid and Belmonte to deliver methamphetamine at his residence on the day in question. In fact, at trial Patrick admitted that Madrid and Belmonte were to bring the five pounds of methamphetamine to his house in exchange for the ephedrine provided by the informant. That testimony alone is sufficient for any rational trier of fact to have found an agreement, and the requisite intent to convict Patrick on the conspiracy charge. We find that the prosecution introduced evidence that would allow a rational factfinder to find each of the required elements beyond a reasonable doubt.
 
 
 27
 (b) Possession With Intent To Distribute
 
 
 28
 In order to sustain Patrick's conviction, there must be sufficient evidence to show that he had either actual or constructive possession of the cocaine. See United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986). We have previously held that the "uncorroborated testimony of an accomplice is sufficient to prove constructive possession of contraband," United States v. Earl, 27 F.3d 423, 425 (9th Cir.1994), unless it is "incredible or insubstantial." Id. See also United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, sub nom. Brandon v. United States, 502 U.S. 1062 (1992).
 
 
 29
 Constructive possession "has been generally defined as knowingly having both the power and intention at a given time to exercise dominion or control over the property." United States v. Cousins, 427 F.2d 382, 384 (9th Cir.1970). "The circumstances of each case must be examined to determine if there is 'such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession'." Id. (quoting United States v. Casalinuovo, 350 F.2d 207, 209-11 (2nd Cir.1965). While the uncorroborated evidence in this case would be sufficient to convict Patrick on this count, there was also corroborating evidence at trial.
 
 
 30
 The evidence clearly demonstrated that Patrick had dominion and control over the methamphetamine. In fact, at trial he admitted that he and his fellow co-defendants did in fact attempt to distribute methamphetamine to the informant in exchange for ephedrine. Furthermore, there were numerous taped telephonic conversations and meetings indicating that Patrick arranged for the transaction to take place and for Madrid and Belmonte to deliver the methamphetamine. Finally, at the arrest, both the methamphetamine and cash were seized in close proximity to Patrick's residence. This evidence clearly corroborates the informant's testimony, and establishes sufficient evidence for the jury to convict Patrick on this count.
 
 
 31
 Finally, Patrick argues that he was entrapped as a matter of law into distributing methamphetamine. To be acquitted as a matter of law on an entrapment defense, Patrick must point to "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act" by government agents. United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986). There was sufficient evidence, however, to show that Patrick, along with Carlos, sought from the outset to exchange large quantities of methamphetamine for ephedrine. Accordingly, we affirm Patrick's convictions as to both counts.
 
 IV.
 
 32
 We review the district court's refusal to dismiss the indictment for outrageous government conduct de novo, United States v. Ahluwalia, 30 F.3d 1143, 1144 (9th Cir.1994), however, we overturn a district court's factual findings, after viewing the evidence in the light most favorable to the government, only if they are clearly erroneous. United States v. Emmert, 829 F.2d 805, 810-11 (9th Cir.1987).
 
 
 33
 For Carlos to succeed on his Fifth Amendment Due Process claim based on outrageous government conduct, "the Government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991). This is an "extremely high standard" for the defendant to meet.[1] Id. The police conduct must be "repugnant to the American system of justice." Shaw v. Winters, 796 F.2d 1124, 1125 (9th Cir.1986). The Government may violate due process either by (1) "completely fabricat[ing] the crime solely to secure the defendant's conviction," or (2) using excessive physical or mental coercion. United States v. Emmert, 829 F.2d 805, 811 (9th Cir.1987). When determining outrageous government conduct, the court evaluates the government's behavior, not the defendant's mental state or predisposition. United States v. McClelland, 72 F.3d 717, 721 n. 1 (9th Cir.1995), cert. denied, 116 S.Ct. 1448 (1996).
 
 
 34
 Carlos maintains that the government's payment to its informant based on a percentage of the assets seized is "outrageous," because it created an "enormous economic incentive" for the informant to increase the amount of drugs and money involved in the transaction. He claims that this creates potential for abuse by informants including "fabricating evidence, withholding exculpatory facts, providing drugs to targets, increasing amounts of drugs involved, and pressuring targets to continue to participate in drug dealing."
 
 
 35
 Carlos also provides examples of alleged instances where the informant committed misconduct including failing to inform the DEA of numerous meetings with Appellants that were not recorded or surveyed, never disclosing to the DEA that Appellants were reluctant to participate, and providing Carlos with drugs and alcohol to encourage his participation.[2] He also claims that he disconnected his telephone in order to avoid being involved in a drug deal, and that the government and the informant continued to fight his reluctance. We reject Carlos' arguments.[3]
 
 
 36
 First, government use of informants to infiltrate drug rings is a well-established practice, and the payment of monetary rewards is specifically permitted by 28 U.S.C. § 524(c)(1)(C). Carlos has provided no case law stating that payment to an informant from forfeited funds is in any way improper or "outrageous." Furthermore, the case agent testified that the informant's compensation was based not only on the amount of assets seized, but also on the amount of information provided. The informant was clearly acting at the direction of the DEA case agent, and had very little, if any, discretion, in conducting the investigation. Additionally, while Carlos did disconnect his telephone, he did so because Patrick overheard the case agent's voice on the telephone line, not because he was an innocent victim trying to avoid getting involved in drug dealing. Carlos was simply trying to avoid getting caught.
 
 
 37
 The facts of this case do not rise to the high level necessary for a finding of outrageous government conduct. The government neither "completely fabricate[d] the crime from start to finish," nor used "excessive physical or mental force" against Carlos. Therefore, we affirm the district court's denial of Carlos' motion to dismiss for outrageous government conduct.
 
 V.
 
 38
 Prior to sentencing, Patrick and Carlos both moved for a downward departure on the basis of sentencing entrapment. The district court, however, declined to rule on these motions, claiming that it did not have authority to "depart" below a mandatory minimum sentence imposed by statute. We hold that the district court did in fact have authority to "depart" below the mandatory minimum sentence.
 
 
 39
 "[S]entencing entrapment may occur where outrageous government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, for the purpose of increasing the amount of drugs and the resulting sentence imposed against that defendant." United States v. Aikens, 64 F.3d 372, 376 (8th Cir.1995), cert. granted and judgment vacated on other grounds, 116 S.Ct. 1346 (1996). In United States v. Staufer, 38 F.3d 1103, 1108 (9th Cir.1994), we recognized "sentencing entrapment" as a legal ground for "departure" from the applicable guideline range.[4] Staufer, however, did not address the application of sentencing entrapment to allow a "departure" below a statutory mandatory minimum sentence.
 
 
 40
 In United States v. Naranjo, 52 F.3d 245 (9th Cir.1995), however, we reversed a district court's refusal to "depart" below a statutory mandatory minimum. The decision was based on the district court's failure to make specific factual findings to support its conclusion that the evidence did not support such a finding. While we never specifically dealt with the issue of whether the district court had "authority" to "depart" below the statutory mandatory minimum, we did in fact grant a departure based on sentencing entrapment. In light of Naranjo, we find that the district court erred in stating that it did not have authority to "depart" below the mandatory minimum sentence. See also United States v. Castandeda, No. 95-30259, Slip. Op. 10863, 10867-70 (9th Cir. Aug. 29, 1996). We emphasize, however, that this "departure" would only take place because a finding of sentence entrapment would require the exclusion of some of the drugs when the calculation of drug quantity is made. The lower quantity might well come within a lower mandatory statutory minimum. It is only in that sense that the court can be said to have departed below the higher mandatory minimum. Thus, application of the "sentencing entrapment" doctrine in determining the quantity of drugs involved for purposes of calculating the applicable statutory minimum sentence is not a Guideline "departure", but only an intermediate step in the court's duty to determine the quantity of drugs involved in determining the applicable statutory minimum sentence. In making a sentencing entrapment claim, a defendant has the burden to demonstrate both the lack of intent to produce and the lack of the capability to produce the amount of drugs at issue. United States v. Steward, 16 F.3d 317, 321-22 (9th Cir.1994) (citing United States v. Barnes, 993 F.2d 680, 682 n. 1 (9th Cir.1993), cert. denied, 115 S.Ct. 96 (1994)). Patrick and Carlos have made various allegations in support of their sentencing entrapment claims, including that the informant offered them drugs at substantially below market value. See Naranjo, 52 F.3d at 250. Therefore, we remand to the district court for resentencing, in order that the court may make express factual findings as to whether Patrick and Carlos have met their respective burdens on their claims of sentencing entrapment. United States v. Conkins, 9 F.3d 1377, 1386-87 (9th Cir.1993).
 
 VI.
 
 41
 We affirm the convictions of Patrick and Carlos McCord. However, we vacate Patrick and Carlos' sentences and remand to the district court for resentencing with instructions to provide specific factual findings as to their claims of sentencing entrapment.
 
 
 42
 AFFIRMED in part, VACATED in part, and REMANDED for resentencing.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The courts have upheld all of the following: Use of false identities by undercover agents, Shaw v. Winters, 796 F.2d, 1124, 1125 (9th Cir.1986), cert. denied, 481 U.S. 1015 (1987), and United States v. Marcello, 731 F.2d 1354, 1357 (9th Cir.1984); the supply of contraband at issue in the offense, Hampton v. United States, 425 U.S. 484, 489, (1976); the commission of equally serious offenses by an undercover agent as part of the investigation, United States v. Stenberg, 803 F.2d 422, 430 (9th Cir.1986); the introduction of drugs into a prison to identify a distribution network, United States v. Wiley, 794 F.2d 514, 515 (9th Cir.1986); the assistance and encouragement of escape attempts, United States v. Williams, 791 F.2d 1383, 1386 (9th Cir.), cert. denied, 479 U.S. 869 (1986); use of a heroin-using prostitute informant whose own activities were under investigation and who engaged in regular intercourse with the defendant, United States v. Simpson, 813 F.2d 1462, 1465-71 (9th Cir.), cert. denied, 484 U.S. 898 (1987)
 
 
 [2]
 The informant admits purchasing one or two alcoholic beverages for Carlos at a bar. There is no evidence that it was for the purpose of, or was sufficient to, overcome Carlos' alleged reluctance to engage in drug dealing
 
 
 [3]
 Although we deny the outrageous government claim, we do not foreclose the district court's consideration of this evidence in deciding the "sentencing entrapment" issue, discussed in Part V, infra
 
 
 [4]
 In Staufer, the defendant was convicted of possession with intent to distribute LSD and sentenced to 151 months in prison. Although the defendant's entrapment defense did not convince the jury that he was not predisposed to make a drug deal, the district judge believed the defendant was not predisposed to make a drug deal of this magnitude. The district court departed from the guideline range based on sentencing entrapment